Curia, per
O’Neall, J.
This case, on account of the novelty and importance of the questions involved in it, has claimed and received from this court more than ordinary attention.
The investigation was one of that kind in wftiich not much aid was to be obtained from authorities. Like most questions arising out of the courts of Ordinary of this State, it is necessary to decide it more upon general principles, than by precedent. The questions made on the *264 circuit, and which are stated in the report, have been submitted to the decision of this court, and will be examined and discussed in their order.
1. The rule, as to parties, is said, in some of the books, to be a rule of convenience merely: this, in one sense, is true, but not in every sense. So far as is necessary to the correct administration of justice — a just and valid decision — it may be, as concerns the court, a rule of convenience merely, and if sufficient parties are made for this purpose, all the ends of convenience are answered. But it is also a rule of necessity: for, until the parties to be affected by the judgment of the court are before it, the court has no right to pronounce upon their rights: and any judgment which might be rendered, would be, as against parties not before the court, absolutely void.
To ascertain what parties are necessary to any proceeding, it is always necessary to inquire who are to be affected by the judgment sought to be obtained. Generally, all persons upon whose rights it may immediately operate, must be parties. This rule applies to all courts, whether of superior or inferior jurisdiction. It is conceded, in this case, that all persons who have any interest in the event of the suit are before the court: but it is said that none but the executor or administrator, with the will annexed, can be called on to prove the will in solemn form of law. This is true, when either is in existence. But when no such persons aie in esse, it is impossible to make them parties. Generally, in suits in the courts of law or equity, where the rights of a testator or intestate are in dispute, the executor or administrator must, be a party. But the reason of that rule is, that the legal right to the personal estate of the deceased is in one or the other of these, and, therefore, no judgment to affect it can be pronounced until the legal owner is before the court. The proceeding in the court of ordinary affects none of the rights of property of the deceased ; it is merely a question as to testacy or intestacy. It is preliminary to the character to be given to his legal representative. Where there is no executor appointed or alive, or where the executor refuses to act, it would be not only impossible to make him a party *265 to proceedings to obtain or revoke a probate, but the party desiring to defeat the will could not be required to apply for, and obtain, an administration with the will annexed. ,For such a party is not necessary to a just and valid decision upon the issue made, which must be decided before the proper character of the representative of the deceased can be ascertained. If such a party was necessary to be made, one of the parties desiring to set aside the will might be compelled to assume the character, and thus be driven to take the oath required by the law, that the will which he denied to be the will of the deceased was his will. The consequence would be, that he must be estop-ped from contesting the will, and be compelled to swear to what he believes to be untrue. No rule'of law can be so universal in its application, as to produce such unjust and immoral consequences. To avoid them, an exception is necessary, and will be made.
Where a will has once been admitted to probate, and is on record in the Ordinary’s office, a general administration could not be granted. The grant must be according to the character which the proceedings already have given to the estate. An application, therefore, for administration upon the estate of Uriah Wicker, deceased, could not have been granted, generally, as of the goods, chattels and credits of an intestate. Whilst the probate remained un-revoked, it must have been granted cum testamento an-nexo. It could not have brought before the court of Ordinary the question, whether the probate granted should be revoked, so as to conclude the parties in interest. For that proceeding is necessarily upon a general citation and ex parte. In the case before us, the executors named refused to qualify and are now dead : the administratrix, with the will annexed, died a feme covert, and is without any personal representative: her husband’s administrator and heirs are before the court, as the respondents to the allegation filed by the heirs of Uriah Wicker and of his widow and administratrix against the will: these are the only persons in esse who can be affected by the decision of the question made, and it would seem that they are the only parties necessary to be made. The proceeding would *266 have been, perhaps, more regular, to have called on the respondents to bring in the letters of administration cum testamento annexo heretofore granted to Mrs. Wicker, and to shew cause against the revocation of the probate, instead of citing them to prove the will in solemn form of law. In the court of Ordinary, there is nothing like technical precision in the proceedings: whatever may be the form pursued there, if it substantially presents the same question which would have been presented in a more formal proceeding, it will be sufficient. We understand that the allegation filed, alleged the supposed will not to be the will of the deceased, and sought to set aside the probate, and to have administration of his goods, chattels and credits, as an intestate. This was, in substance, an applicatian to have the' letters of administration cum testamento annexo called in, and the probate revoked; and to such a proceeding the persons before the court were the proper parties.
2. On the trial of the case I thought, and ruled, that acquiescence by the parties in interest for four years, after the removal of all disabilities, in the probate of a will in common form, would preclude them from requiring it to be proved in solemn form of law. The rule stated in most of the English books appears to be, that at any time within thirty years after probate in common form, the executors may be required to prove a will' in solemn form of law. I had supposed that the English rule to which I have adverted, was still of universal application in the ecclesiastical courts of Great Britain, and that, to sustain the rule which 1 adopted, it was necessary to declare the inapplicability of the English rule to probates in common form in this State, and to adopt a new one for ourselves. On looking, however, more maturely into the question, I am satisfied that, in England, there is no specific rule on the subject. In the cases of Newell vs. Weeks, 2 Phillim. 224, and Hoffman vs. Norris, lb. 230, the parties were held to be concluded from disputing the probate in common form, on the ground of acquiescence. The case of Hoffman vs. Norris not only shews that there is no limitation of time within which applications to have a will proved in solemn *267 form of law shall in all cases be made, but. also goes far to sustain the conclusion to which I came on the circuit. The testator, George Hoffman, died in ’95, and his will was proved in common form in the same year. Lewis Hoffman, one of his brothers, who was excluded by the will from a share of the estate, was a party to a bill in equity brought against the executors and himself for an account, to which he answered, admitting his brother’s death, the execution and probate of the will, and claiming as next of kin a share of the legacy which had lapsed: this was accordingly decreed to be paid to him, and he received his share of the interest on the said legacy. In 1804, he obtained a decree against the executor to bring in the probate and prove the will. Sir William Wynne dismissed the suit. In delivering his judgment he says: “ There can be no doubt but that, as a brother, he is entitled to controvert the will, and if probate has been obtained in common form, he can call in and put the executor on proof. I do not know that there is any specific time that limits a party. The will had been proved in ’95; this decree was taken out in 1804; so that there had been a quiet possession for nine years. I think I know instances in which the court has allowed the probate to be called in after a longer time: — that it may be done with cause shewn: that it may be done, under any circumstances, is what I cannot admit: it would be contrary to reason and every principle of justice. Where the opposing party has been in a situation which rendered it impossible or difficult for him to have proceeded earlier, — if he has been absent from the country, a minor, or laboring under imbecility,— he may be admitted.” This case relieves us from all difficulty of having to combat a previous well settled rule in England, and leaves us free to adopt such an one as we think will best promote the ends of justice. By this case, too, we see that in England acquiescence in a probate in common form, is the ground on which a party is precluded from requiring probate in solemn form. In cases of minority, or other legal disability, no presumption of acquiescence can arise. In this State we have, for the sake of an uniform rule, adopted the time fixed by the statute of *268 limitations, as a bar to cases in which, from its letter, it did not apply, but which fall within its reason and spirit. In the case now under consideration, within what time shall the parties’ acquiescence in a probate in common form, be presu tiled is the only question 1 In almost every case arising under a will, the statute of limitations may operate as a protection to tíie parties. Possession of a legacy for. more than four years, will, generally, protect the legatees against all persons in esse, and not laboring under some legal disability to sue. So, too, after the executor has done such an act as is intended by him, and known to the legatees, to be a termination of his trust, he will be protected against a- future account by the . statute. Every matter, therefore, which is embraced by a will of personalty, might, it seems, be protected by the statute; and if its bar would operate to defeat any claim which might arise, if the probate was revoked, there can be no use or propriety in granting a revocation, if it may not benefit the party. But, I apprehend, the effect of allowing it, after the statute would have barred the parties in interest, if they could, at law, have sued the executor or legatee, would be to defeat the statute in its most useful provisions. Upon the revocation of probate, administration is granted generally : such acts as the executor may have done, in the course of due administration, are good — he, himself, cannot be made personally liable for having delivered or paid a legacy: but how stands the question as to the legatee ? He is in possession of the goods, chattels and credits of the intestate ; his administrator claims them; when did his cause of action accrue? is a preliminary inquiry to the bar of the statute. The answer must be, at the grant of administration. For then only could the legatee haye been sued, and then only could the plaintiff have demanded possession. The consequence of this would be, that, although the legatee in possession might, as against the very persons who claim, if they could have sued without administration, be entitled to the protection of the statute; yet, because they are compelled to obtain a legal character to sue, that will be enough to defeat an otherwise legal protection. Such consequences ought not to be permitted, where it is *269 possible legally to avoid them. The concurrence of my brethren in the rule adopted on the circuit, enables me to give uniformity to the law in this respect, by requiring applications to compel an executor to prove a will in solemn form of law, to be made within four years next after the grant of probate in common form, unless the parties in interest, or some of them, should be laboring under some legal disability, to sue, and in such case, within four years next after the removal of such disability.
3. It has not been contended here, that the decision of the circuit court, ruling that Hampton’s affidavit was competent evidence, was incorrect; it is, therefore, only necessary to inquire whether it was sufficient to admit the will to probate. The legal presumption is always against an unfinished will; and as is said in Devereux vs. Bullock, “ It is never to be forgotten, that the strong presumption of law is against a paper of this nature, and the onus pro-bandi lies on those who set it up, to shew, on the one hand, the full and entire determination of mind of the deceased, and on the other, the inevitable necessity which prevented him from executing it.” What is necessary to repel the legal presumption, that it is not the will of the deceased, arising from the want of execution, is the question. The three following requisites appear to me to be indispensable. 1st. That it was written according to the directions of the testator. 2. That it was read over to, and approved by, him. 3d. That he was prevented from formally executing it by his death, and not a change of his mind. These propositions seem to be well sustained by the following cases. In Green vs. Skipworth, 1 Phillim. 53, answers to interrogatories put to the testator — reduced to writing, read over to him and witnessed, and which he was prevented from having reduced to form, and executing as a will, by his sickness and death — were admitted to probate. In Devereux vs. Bullock, 1 Phillim. 60, unfinished instructions for a will, which the deceased was not prevented from completing by his sickness or death, but from a want of intention to make a will, were refused to be admitted to be proved. In Wood vs. Wood, 1 Phillim. 357, a paper of instructions for his will, read over to the testator, and *270 which he was prevented from executing by his death, was admitted to probate. I am aware that it is said, if a will be prepared according to the instructions of the deceased, and he is prevented by death from executing it, that it may be admitted to probate. But this dictum has been misunderstood. A paper prepared from verbal instructions, is, at best, nothing but a nuncupative will, and must have its legal requisites. If the instructions are in writing, and written by the deceased himself, they might be admitted to probate on proof of his hand-writing, and that he was prevented from executing his will more formally by inevitable necessity ; or, if written by another, then the instructions themselves, if proved to be written at the desire of the deceased, and read over to, and approved by, him, with the further proof that his sickness or death prevented any further progress in preparing his will, may be admitted to probate. This, however, is as far as the English cases would warrant us in carrying the doctrine in favor of unfinished testamentary papers ; and is, perhaps, farther than I should be willing to'carry it here. There are some reasons which, to my mind, establish the necessity of requiring more proof of a testamentary disposition with us, than is required in England. In this State, both real and personal estate are subjected to the same rule of distribution ; in many instances the personal estate is worth ten times the value of the real — and one class of it, slaves, approaches, in some respects, the fixed, permanent, and certain value of real estate, which, in the common law, has given it a higher rank than personalty. To permit an estate more valuable than land, and equally as desirable to the heirs, on account of qualities belonging to the property, to be devised with less solemnity, was an anomaly in our law to which we were long subject. The .Legislature has, however, within a few years, required wills of personal estate to be executed with the same solemnities as wills of real estate. In this state of things, I should be willing to require more proof of a testamentary disposition than is required in England; and to lay down the rule which I stated in the report: “ That no paper was entitled to probate, unless it appeared that the testator intended it to op *271 erate as an effectual testamentary disposition of his personal estate.” Such a rule is not, however, necessary to this case, and, since the alteration of the law, may never be necessary to any future case ; it is, therefore, unnecessary to pursue the investigation of its propriety any farther.
The proof made by Hampton’s affidavit, fails to establish two things essential to a testamentary paper prepared by a person other than the testator, from parol instructions, viz: 1st. That it was read over to, and approved by, the deceased. 2. That his sickness and death prevented its execution. But notwithstanding the testimony of the witness, Hampton, adduced by the appellants to sustain the will, is insufficient, it is said that we are at liberty, from the lapse of time, his death and that of the ordinary, to presume that he testified orally to every thing necessary to legally establish the will. This might have been a just legal presumption, if his evidence had not been reduced to writing. But after the ordinary reduced to writing his testimony, and admitted the will to probate upon it, as appears by the terms of the probate itself, there is no longer any room to presume any thing. We have before us the exact proof upon which the ordinary acted, and the presumption which might otherwise have arisen is repelled. In addition to this, the appellants offered the evidence to sustain the will, and after having undertaken to give us the words of John Hampton, they cannot ask us to add to them. If, however, the appellants had relied on the presumption alone, and the appellees, to repel it, had undertaken to prove what John Hampton did swear, they would have had an unquestionable right to do so ; and his affidavit, found in the supposed will in the ordinary’s office, and referred to in the probate as the evidence upon which it was granted, would have been a clear and conclusive shewing of what his testimony was, and would thus have repelled and destroyed the presumption. In every point of view, we are satisfied the decision below is correct. The motion for a new trial is dismissed.
Johnson and Harter, JJ. concurred.
Note. — After the decision of this case, administration of the estate of Uriah Wicker was granted to John Riddlehoover and others, *272 who filed their supplemental hill against the representatives of John P. Kinard and Catharine, his wife, for an account of the estate of Uriah Wicker. The original bill was filed in 1829, for partition of the real estate. On the trial of the case, it appeared that the dis-tributees of Uriah Wicker, were, besides his widow, several brothers and sisters, all of whom were of age at the time of his death, and the children of a deceased brother, who were then infants. The Court of Appeals decided that, as against the distributees who were of age in 1808, when the intestate died, the title of the widow Cath-arine, and her second husband, John P. Kinard, was good, on the presumption arising from the lapse of time. The court, per Harper, J. says: “ Presumptions must sometimes be made against the well known truth of the fact. If twenty years have elapsed without the payment of interest, or any acknowledgment of a bond, we must presume it paid, notwithstanding the fullest conviction that it never has been paid. We will presume whatever is necessary to give efficacy to long possession. If it were necessary to make any specific presumption in this case, I would presume that the parties who were of full age at the time of the probate, released to Catha-rine Wicker their interest in the estate, or their right to contest the will. The probate cannot be regarded as revoked at their suit, but at the suit of those who were under disability.”
The children of the deceased brother, who came of age within four years next before the filing of the bill, were held to be entitled to an account, but not to interest, except from the filing of the bill. - Vide 1 Hill Ch. 376.